IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

DERICKA ANDERSON,                    )
                                     )
            Plaintiff,               )
                                     )
      v.                             )
                                     )    1:22-cv-598
TROOPER M JOHNSON, FIRST SGT         )
J NASH, TROOPER C RIDENHOUR,         )
and LEBLEU TOWING & SALVAGE          )
TOWING,                              )
                                     )
            Defendants.              )

## MEMORANDUM OPINION AND ORDER

**OSTEEN, JR., District Judge**

Plaintiff Dericka Anderson, proceeding pro se, filed this action against Defendants Trooper M.S. Johnson, First Sgt. J.S. Nash, Trooper C.K. Ridenhour, and LeBleu Towing & Salvage Towing. (Doc. 1.) She alleges Defendants deprived her of and infringed upon various constitutional and state law rights. (See generally id.) Currently before this court is a Motion to Dismiss filed by Trooper M.S. Johnson, First Sgt. J.S. Nash, and Trooper C.K. Ridenhour ("Law Enforcement Defendants"). (Doc. 13.) Plaintiff responded in opposition. (Doc. 17.) For the reasons provided herein, Law Enforcement Defendants' Motion to Dismiss will be granted in part and denied in part.

# I. **FACTUAL BACKGROUND**

Plaintiff Dericka Anderson alleges that she is a Maryland resident. (Complaint ("Compl.") (Doc. 1) at 3.)[1] Plaintiff alleges that on July 3, 2022, she was pulled over by North Carolina state troopers. (See id. at 5, 21.) At that time, she called her father and uncle over Facetime. (Id. at 5.) Trooper Johnson informed Plaintiff that he clocked her driving 107 miles per hour, which she denied. (Id.) He requested her license and registration, and Plaintiff provided a registration and an "international drivers permit," "along with an injunction filed with the truck [she] was traveling in at the time." (Id.; see also Doc. 1-1 (exhibit with Plaintiff's purported "injunction").)

Plaintiff alleges that Trooper Johnson did not review the documents Plaintiff provided. (Id. at 6.) Instead, he returned to his vehicle, and Plaintiff overheard him state, "[w]e have a sovereign one." (Id.) Thereafter, additional officers arrived on the scene. (Id.) Plaintiff also informed Trooper Johnson that she was not a sovereign citizen. (Id.)

---

[1] All citations in this Memorandum Opinion and Order to documents filed with the Court refer to the page numbers located at the bottom righthand corner of the documents as they appear on CM/ECF.

Plaintiff alleges that Trooper Johnson "grab[bed] [her] arm," "demand[ed] [she] get out of the truck," and "grabb[ed] and touch[ed] [her] inappropriately." (Id.) She explained that she became "scared and fearful for [her] life" and that she "thought he was going to rape [her]." (Id.) Plaintiff further alleges that Trooper Johnson "continued to forcefully grab and touch [her] in an inappropriate manner to the point that [her] breast [was] . . . exposed." (Id. at 7.)

Another officer, First Sgt. Nash, arrived on the scene but also declined to review Plaintiff's documents. (Id.) He instructed Trooper Johnson to "forcefully remove [Plaintiff] from the truck." (Id.)

Plaintiff alleges that Trooper Johnson and First Sgt. Nash "physically and sexually assaulted [her] (with their hands and body)," and that she was forcefully removed from the truck with the assistance of another officer, Trooper Ridenhour. (Id.) Plaintiff requested a female law enforcement officer's presence, but her request was denied. (Id.) Plaintiff then alleges that First Sgt. Nash placed her in a chokehold "almost to submission" even though she informed him that she has asthma and could not breathe, and that First Sgt. Nash applied pressure to her neck, head, body, and back with his weight. (Id. at 8.) Plaintiff alleges that at some point during this encounter, she lost her

- 3 -

shoes, was forced to walk on the ground and grass barefoot, and was handcuffed. (Id. at 8–9.)

Sometime after, a female officer arrived on the scene and transported Plaintiff to appear before a Magistrate Judge. (Id. at 9.) Plaintiff's truck was confiscated by a towing company, and Plaintiff alleges her truck was searched "unlawfully" by law enforcement. (Id. at 10.) Plaintiff alleges a court date was set for her interaction with state law enforcement pursuant to "unlawful[]" and "unconstitutional" enforcement of the law. (Id. at 11.)

Plaintiff alleges a host of violations of various state constitutions, declarations of rights, international treaties, apostilles, statutes, historical documents, and more. (See generally id. at 10–11.) In addition, Plaintiff alleges "excessive force, police brutality, tortuous interference, harassment, discrimination, monopolies, negligent training of the law, intentional infliction of emotional distress, false arrest and imprisonment, deprivation of [her] civil rights, breach of trust, trespass, bad faith, unclean hands, enforcement of unconstitutional laws, breach of the peace, malicious, fallacy and maladministration which [Defendants] have violated [her] right to life, liberty, and pursuit of happiness." (Id. at 4.)

## II. <u>**STANDARD OF REVIEW**</u>

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" and demonstrates "more than a sheer possibility that a defendant has acted unlawfully." <u>Id.</u> The factual allegations must be sufficient to "raise a right to relief above the speculative level" so as to "nudge[] the[] claims across the line from conceivable to plausible." <u>Twombly</u>, 550 U.S. at 555, 570; <u>see also Iqbal</u>, 556 U.S. at 680.

When ruling on a motion to dismiss, this court accepts the complaint's factual allegations as true. <u>Iqbal</u>, 556 U.S. at 669. Further, this court liberally construes "the complaint, including all reasonable inferences therefrom . . . in the [claimant's] favor." <u>Est. of Williams-Moore v. All. One Receivables Mgmt., Inc.</u>, 335 F. Supp. 2d 636, 646 (M.D.N.C. 2004). The Supreme Court has also held that "[a] document filed pro se is to be liberally construed and a pro se complaint,

- 5 -

however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007). Even so, the Fourth Circuit has "not read Erickson to undermine Twombly's requirement that a pleading contain more than labels and conclusions." Giarratano v. Johnson, 521 F.3d 298, 304 n.5 (4th Cir. 2008) (internal quotations omitted) (applying the Twombly standard in dismissing a pro se complaint). Consequently, even given the deferential standard allocated to pleadings at the motion to dismiss stage, a court will not accept mere legal conclusions as true, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, [will] not suffice." Iqbal, 556 U.S. at 678.

## III. **ANALYSIS**

Plaintiff alleges "excessive force, police brutality, tortuous interference, harassment, discrimination, monopolies, negligent training of the law, intentional infliction of emotional distress, false arrest and imprisonment, deprivation of [her] civil rights, breach of trust, trespass, bad faith, unclean hands, enforcement of unconstitutional laws, breach of the peace, malicious, fallacy and maladministration which [Defendants] have violated [her] right to life, liberty, and pursuit of happiness." (Compl. (Doc. 1) at 4.

Although the Supreme Court has directed courts to construe pro se documents liberally, see Erickson, 551 U.S. at 94, courts are not obliged to become an advocate for the unrepresented party, see Weller v. Dep't of Soc. Servs., 901 F.2d 387, 391 (4th Cir. 1990), "to construct full blown claims from sentence fragments," Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985), or "to construct a [pro se] party's legal arguments for [her]," Small v. Endicott, 998 F.2d 411, 417–18 (7th Cir. 1993). Even so, this court construes Plaintiff's claims of "excessive force, police brutality, . . . [and] deprivation of [her] civil rights," as a claim pursuant to 42 U.S.C. § 1983 alleging excessive force in violation of the Fourth Amendment by Law Enforcement Defendants.[2] (See Compl. (Doc. 1) at 4.) This court construes Plaintiff's allegations of "tortuous interference, harassment, discrimination . . . negligent training of the law, intentional infliction of emotional distress, . . . deprivation of [her] civil rights,

_____

[2] Law Enforcement Defendants argue Plaintiff's complaint must be dismissed under Fed. R. Civ. P. 12(b)(1) for lack of federal question jurisdiction. (Mem. in Supp. of Mot. to Dismiss ("Law Enforcement Defs.' Br.") (Doc. 14) at 4.) Because this court construes Plaintiff's complaint as a claim for violation of her constitutional rights pursuant to 42 U.S.C. § 1983, this court has subject matter jurisdiction over the case. See Marts v. Republican Party of Virginia, Inc., 744 F. App'x 806, 807 (4th Cir. 2018).

breach of trust, trespass, bad faith, unclean hands, . . . [and] breach of the peace," (see id.), as state common law claims.

Although Plaintiff states in her complaint that she is alleging "discrimination, monopolies, negligent training of the law, . . . false arrest and imprisonment," (see id.), all of which correspond to federal causes of action, Plaintiff's allegations are conclusory. She does not allege any facts plausibly stating a claim for racial discrimination, antitrust violations, false arrest, or malicious prosecution, nor has Plaintiff named a municipality that may be subject to Monell liability as a defendant in this action. Finally, Plaintiff also includes many confusing and inflammatory allegations which lack any legal merit, (see, e.g., id. ("This is an action . . . to remedy . . . enforcement of unconstitutional laws, . . . malicious, fallacy and maladministration which [Defendants] have violated my right to life, liberty and pursuit of happiness . . . .")), and that this court declines to address. To the extent Plaintiff mentions several statutes, maxims, state laws, historical documents, legal tenets, and more, (see generally, Compl. (Doc. 1)), this court is not obligated to construct claims for Plaintiff from these conclusory and obscure references. See Weller, 901 F.2d at 391.

## A.   Plaintiff's Claims Under 42 U.S.C. § 1983

Under 42 U.S.C. § 1983, "a plaintiff must establish three elements to state a cause of action: (1) the deprivation of a right secured by the Constitution or a federal statute; (2) by a person; (3) acting under color of state law." Jenkins v. Medford, 119 F.3d 1156, 1159-60 (4th Cir. 1997). Qualified immunity protects a state actor sued under § 1983 when that official's conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." White v. Pauly, 580 U.S. 73, 79 (2017) (citation omitted). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." Mullenix v. Luna, 577 U.S. 7, 12 (2015) (citation omitted). While there need not be a case directly on point confirming a clearly established right, "existing precedent must have placed the statutory or constitutional question beyond debate." Id. at 12. When a defendant raises a qualified immunity defense, courts "consider whether the plaintiff has been deprived of a constitutional right. If the complaint shows that the plaintiff has not suffered such a deprivation, the defendant is entitled to dismissal of the claim under Rule 12(b)(6)." Jenkins, 119 F.3d at 1159-60.

- 9 -

In her complaint, Plaintiff appears to allege Law Enforcement Defendants used excessive force to effect her arrest in violation of the Fourth Amendment. (See Compl. (Doc. 1) at 3 ("Plaintiff . . . [was] sexual[ly] assaulted . . . by Defendant[s]"); id. at 7 ("The officer . . . continued to forcefully grab and touch me in an inappropriate manner"); id. ("Both officers . . . physically and sexually assaulted me"); id. ("another officer . . . grab[bed] my left thigh and ankle"); id. at 8 ("Sgt J. Nash put me in a choke hold while I was being handcuff[ed]").) Law Enforcement Defendants assert that they did not violate "any of Plaintiff's constitutional rights," and therefore qualified immunity shields them from any liability in this case. (See Law Enforcement Defs.' Br. (Doc. 14) at 12).

"The Fourth Amendment prohibits law enforcement officers from using excessive or unreasonable force in the course of making an arrest or otherwise seizing a person." Betton v. Belue, 942 F.3d 184, 191 (4th Cir. 2019) (citing Graham v. Connor, 490 U.S. 386, 395 (1989)). A claim that law enforcement officers used excessive force in the course of effecting an arrest is analyzed under the "objective reasonableness" standard. Jones v. Buchanan, 325 F.3d 520, 527 (4th Cir. 2003). In the reasonableness determination, the court must balance "the nature and quality of the intrusion on the individual's Fourth

Amendment interests against the countervailing governmental interests at stake." <u>Graham</u>, 490 U.S. at 396 (citation omitted) (internal quotation marks omitted). The court must analyze several factors to determine "whether the force employed was objectively reasonable under all the circumstances, including 'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest, or attempting to evade arrest by flight.'" <u>Lewis v. Boucher</u>, 35 F. App'x 64, 69 (4th Cir. 2002) (quoting <u>Graham</u>, 490 U.S. at 396). Reasonableness "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." <u>Graham</u>, 490 U.S. at 396.

### 1. **Plaintiff's Allegations against Trooper Ridenhour**

First, Plaintiff has not alleged that Trooper Ridenhour is a person who assaulted her, placed her in a chokehold, or otherwise exerted any excessive degree of force against her. At most, Plaintiff alleges Trooper Ridenhour "[came] over and grab[bed] [her] left thigh and ankle" while removing Plaintiff from her vehicle. (Compl. (Doc. 1) at 7.) "It is . . . well established that the right to make an arrest carries with it the right to use a degree of physical coercion or threat thereof to effect the arrest." <u>Brown v. Gilmore</u>, 278 F.3d 362, 369 (4th

- 11 -

Cir. 2002). Plaintiff fails to allege any facts that plausibly
state a Fourth Amendment claim for excessive force against
Trooper Ridenhour. If the complaint "fails to allege particular
facts against a particular defendant, then the defendant must be
dismissed." SD3, LLC v. Black & Decker (U.S.), Inc., 801 F.3d
412, 422 (4th Cir. 2015). As this court will find that Trooper
Ridenhour is entitled to public official immunity as to any
state law claims alleged by Plaintiff, see infra Section III.B),
Trooper Ridenhour must be dismissed.

### 2. **Plaintiff's Sexual Assault Allegations against Trooper Johnson and First Sgt. Nash**

Second, Plaintiff alleges Trooper Johnson and First
Sgt. Nash sexually assaulted her. (Compl. (Doc. 1) at 7-8.) In
analyzing a case involving sexual assault by a police officer
after a traffic stop, the Fourth Circuit specifies a
constitutional right "not to be subjected by anyone acting under
color of state law to the wanton infliction of physical harm."
Jones v. Wellham, 104 F.3d 620, 628 (4th Cir. 1997); see also
Rogers v. City of Little Rock, Ark., 152 F.3d 790, 795 (8th Cir.
1998) ("A number of circuit courts have found due process
violations when state actors have inflicted sexual abuse on
individuals."). Here, Plaintiff has alleged facts sufficient to
indicate that Trooper Johnson and Sgt. Nash sexually assaulted

her during a traffic stop. (Compl. (Doc. 1) at 7 ("The officer
(Trooper M Johnson) continued to forcefully grab and touch me in
an inappropriate manner to the point that my breast [was]
exposed, . . . . Both officers (Trooper M Johnson and First SGT
J Nash) physically and sexually assaulted me (with their hands
and body) . . . .).) Taken as true, those facts are sufficient
at this stage of the proceedings to state a violation of
Plaintiff's constitutional right "not to be subjected by anyone
acting under color of state law to the wanton infliction of
physical harm," see Rogers 152 F.3d at 795, and therefore states
a claim under 42 U.S.C. § 1983.

### 3. **Plaintiff's Chokehold Allegations against First Sgt.**
   **Nash**

Third, Plaintiff alleges First Sgt. Nash placed her in a
chokehold, resulting in her "head, neck and back . . . hurting"
and causing "major problems breathing from being in a chokehold
for so long." (Compl. (Doc. 1) at 8.) Although Plaintiff alleges
this was "excessive force by Sgt J. Nash," (see id.),
Plaintiff's statement of excessive force is conclusory. Even so,
considering the Graham factors, see Graham, 490 U.S. at 396,
Plaintiff does not appear to have posed a threat to Law
Enforcement Defendants: Plaintiff alleges that she was stopped
for a traffic violation for speeding, that she was "a little

- 13 -

lady 4'7 around 130 pounds," that she "feared for her life," and that she "never resisted" but only "ask[ed] that a woman officer be present." (See Compl. (Doc. 1) at 8.) Accordingly, Plaintiff has plausibly alleged the force employed to subdue her, a chokehold, was not objectively reasonable in these circumstances and was therefore unconstitutional.[3]

## 4. **Law Enforcement Defendants' Qualified Immunity Defense**

Law Enforcement Defendants argue "qualified immunity shields [them] from liability," because they "are State Troopers who were performing their job as State Troopers and on duty when Plaintiff was arrested for her criminal infractions, which she attempts to assert as the basis for this lawsuit." (Law Enforcement Defs.' Br. (Doc. 14) at 12.)

In the course of evaluating a qualified immunity defense raised in a motion to dismiss for failure to state a claim, this

---

[3] Although Plaintiff has not alleged any injury resulting from the chokehold, circuit courts have noted that the reasonableness inquiry "focuses on the force itself rather than the injury." Coley v. Lucas Cnty., Ohio, 799 F.3d 530, 539 (6th Cir. 2015). However, this court notes that the chokehold may not be sufficient to sustain Plaintiff's claim for excessive force further along in proceedings, as other courts have found chokeholds do not constitute excessive force at the summary judgment stage when "the force was de minimis, the hold lasted for no more than a few seconds, and no lasting injuries were caused." Housley v. Holquist, 879 F. Supp. 2d 472, 481 n.8 (D. Md. 2011).

court must "accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in favor of the plaintiff." Ray v. Roane, 948 F.3d 222, 226 (4th Cir. 2020) (quoting King v. Rubenstein, 825 F.3d 206, 212 (4th Cir. 2016)). Though Law Enforcement Defendants appear to contradict some of Plaintiff's allegations by their arguments in the brief, this court limits its analysis to the facts in the complaint, construing all allegations stated in that complaint as true and in the light most favorable to Plaintiff. See Ray, 948 F.3d 225 (acknowledging that though "there is evidence in the record on appeal that appears to contradict some of the allegations in the complaint, . . . because [the plaintiff's] claims were dismissed for failure to state a claim, [the court must] 'limit [its] review to the complaint itself.'") (citation omitted).

A panel of the Fourth Circuit has held that "[a] sexual assault by a police officer clearly violates the security interests protected by the Fourth Amendment." Smith v. Ray, 409 Fed. App'x 641, 649 (4th Cir. 2011) (citing Fontana v. Haskin, 262 F.3d 871, 880 (9th Cir. 2001)). Although existing precedent in this Circuit does not specifically address the issue of a sexual assault by a law enforcement officer during a traffic stop, the Fourth Circuit indicates that sexual assault during a

- 15 -

traffic stop would be a violation of the Fourth Amendment. <u>See</u> <u>Jones v. Wellham</u>, 104 F.3d 620, 628 (4th Cir. 1997) (indicating that a sexual assault which occurs "in the course of an attempted arrest or apprehension of one suspected of criminal conduct" would be a Fourth Amendment violation). This precedent indicates that sexual assault during a traffic stop is an established constitutional violation about which a reasonable person would have known. Therefore, Trooper Johnson and First Sgt. Nash are not entitled to qualified immunity for Plaintiff's allegations of sexual assault at this stage of the proceedings. Similarly, Plaintiff plausibly alleges that the chokehold employed by First Sgt. Nash during Plaintiff's traffic stop may not have been an objectively reasonable use of force under the <u>Graham</u> factors. Applying the qualified immunity defense standard, a reasonable person would know that use of unreasonable force to effect an arrest is a constitutional violation. Therefore, considering only the facts alleged in Plaintiff's complaint and construing those allegations in Plaintiff's favor, Defendants Trooper Johnson and First Sgt. Nash are not entitled to qualified immunity at this stage of the proceedings for either the sexual assault or the chokehold allegations.

In sum, Plaintiff has alleged she was sexually assaulted and placed in an unnecessary chokehold during a traffic stop, so she has plausibly alleged claims for excessive force under the Fourth Amendment, pursuant to 42 U.S.C. § 1983, against Trooper Johnson and First Sgt. Nash. Therefore, Trooper Johnson and First Sgt. Nash are not entitled to qualified immunity as to any claim for excessive force resulting from the sexual assault or the chokehold at this stage in the proceedings. Plaintiff fails to plausibly state any claims under § 1983 against Trooper Ridenhour.

B.  **State Law Claims**

Plaintiff alleges "excessive force, police brutality, tortuous interference, harassment, discrimination, . . . negligent training of the law, intentional infliction of emotional distress, . . . deprivation of my civil rights, breach of trust, trespass, bad faith, unclean hands, . . . [and] breach of the peace." (Compl. (Doc. 1) at 4.) To the extent Plaintiff seeks to bring state common law claims against Law Enforcement Defendants based on these allegations, those claims are dismissed as to Trooper Ridenhour due to his public official immunity, but are not dismissed as to Trooper Johnson and First

- 17 -

Sgt. Nash because those defendants are not entitled to public official immunity at this stage of the proceedings.[4]

Public official immunity is a judicially-created doctrine that "shields public officials from personal liability for claims arising from discretionary acts or acts constituting mere negligence, by virtue of their office, and within the scope of their governmental duties." Bartley v. City of High Point, 381 N.C. 287, 294, 873 S.E.2d 525, 533 (2022). Its "chief function" is "to shield public officials from tort liability when those officials truly perform discretionary acts that do not exceed the scope of their official duties." Id. Police officers performing their duties are public officials for purposes of the immunity. Id. at 295, 873 S.E.2d at 533. "Distinct from qualified immunity under § 1983, which is a purely objective

_____

[4] Public official immunity "is unavailable to officers who violate clearly established rights because an officer acts with malice when he does that which a man of reasonable intelligence would have known to be contrary to his duty." Maney v. Fealy, 69 F. Supp. 3d 553, 564 (M.D.N.C. 2014) (internal quotation marks omitted) (citing Bailey v. Kennedy, 349 F.3d 731, 742 (4th Cir. 2003)). Because this court determined that Plaintiff has plausibly stated a claim for excessive force based on her allegations of sexual assault and the use of a chokehold, and that Trooper Johnson and First Sgt. Nash are not entitled to qualified immunity as to those claims, they are also not entitled to public official immunity as to those claims. In light of that determination, this court also finds Law Enforcement Defendants are not entitled to public official immunity as to any state common law claims Plaintiff seeks to bring.

analysis, North Carolina's public official immunity doctrine 'involves a determination of the subjective state of mind of the governmental actor.'" Knibbs v. Momphard, 30 F.4th 200, 227 (4th Cir. 2022) (citing Andrews v. Crump, 144 N.C. App. 68, 76–77, 547 S.E.2d 117, 123 (2001)).

"An individual will not enjoy the immunity's protections if his action 'was (1) outside the scope of official authority, (2) done with malice, or (3) corrupt.'" Bartley, 381 N.C. at 294, 873 S.E.2d at 533 (citations omitted). "A defendant acts with malice when he wantonly does that which a man of reasonable intelligence would know to be contrary to his duty and which he intends to be prejudicial or injurious to another." Grad v. Kaasa, 312 N.C. 310, 313, 321 S.E.2d 888, 890 (1984). In other words, a public official's act is malicious when it is "(1) done wantonly, (2) contrary to the actor's duty, and (3) intended to be injurious to another." Bartley, 381 N.C. at 296, 873 S.E.2d at 534 (quoting Wilcox v. City of Asheville, 222 N.C. App. 285, 289, 730 S.E.2d 226, 226 (2012)).

First, "[a]n act is wanton when it is done of wicked purpose or when done needlessly, manifesting a reckless indifference to the rights of others." Id. (citation omitted). Second, "'[g]ross violations of generally accepted police practice and custom' contributes to the finding that officers

- 19 -

acted contrary to their duty." Id. (quoting Prior v. Pruett, 143 N.C. App. 612, 623–24, 550 S.E.2d 166, 174 (2001), disc. review denied, 355 N.C. 493 (2002)). Finally, "'the intention to inflict injury may be constructive' intent where an individual's conduct 'is so reckless or so manifestly indifferent to the consequences, where the safety of life or limb is involved, as to justify a finding of willfulness and wantonness equivalent in spirit to an actual intent.'" Id. (quoting Foster v. Hyman, 197 N.C. 189, 192, 148 S.E.2d 36, 38 (1929)).

Though the standard of review for a Rule 12(b)(6) motion to dismiss requires this court to construe the facts alleged in the complaint as true and in the light most favorable to Plaintiff, if the defense of public official immunity is raised, "[w]here a complaint offers no allegations from which corruption or malice might be inferred, the plaintiff has failed to show an essential [element] of his claim[.]" Campbell v. Anderson, 156 N.C. App. 371, 377, 576 S.E.2d 726, 730 (2003). Rather, "[i]t is well settled that absent evidence to the contrary, it will always be presumed that public officials will discharge their duties in good faith and exercise their powers in accord with the spirit and purpose of the law." McCullers v. Lewis, 265 N.C. App. 216, 227–28, 828 S.E.2d 524, 535 (2019) (quoting Strickland v. Hedrick, 194 N.C. App. 1, 10–11, 669 S.E.2d 61, 68 (2008)). This

- 20 -

presumption creates a heavy burden which can only be overcome "by competent and substantial evidence . . . [that is] sufficient by virtue of its reasonableness, not by mere supposition. It must be factual, not hypothetical; supported by fact, not by surmise." Id.

Here, Plaintiff specifically alleges that Trooper Johnson "grabb[ed] and touch[ed] [her] inappropriately" such that she became "scared and fearful for [her] life" and "thought [Trooper Johnson] was going to rape [her]." (Compl. (Doc. 1) at 6.) She further alleges that Trooper Johnson and First Sgt. Nash "physically and sexually assaulted [her] (with their hands and body)" while conducting a traffic stop and that Trooper Ridenhour "grab[bed] [her] left thigh and ankle" to effect Plaintiff's arrest. (Id. at 7.) Finally, Plaintiff alleges that First Sgt. Nash placed her in a chokehold "almost to submission" though she informed him that she has asthma, could not breathe, and is "a little lady 4'7" around 130 pounds" who "never resisted" but only "asked that a woman officer be present" during her traffic stop and arrest. (Id. at 7–8.)

As discussed above, Plaintiff's sole allegation against Trooper Ridenhour is that he grabbed her left thigh and ankle while assisting Trooper Johnson and First Sgt. Nash in removing Plaintiff from her vehicle and placing her under arrest. (See

id.) Though Trooper Ridenhour came into physical contact with Plaintiff, precedent is clear that an arresting officer has "the right to use a degree of physical coercion or threat thereof to effect the arrest." Brown v. Gilmore, 278 F.3d 362, 369 (4th Cir. 2002); State v. Anderson, 40 N.C. App. 318, 321, 253 S.E.2d 48, 50 (1979) ("An officer of the law has the right to use such force as he may reasonably believe necessary in the proper discharge of his duties to effect an arrest."); Myrick v. Cooley, 91 N.C. App. 209, 215, 371 S.E.2d 492, 496 (1988) (in exercising the right to use reasonably necessary force, an officer "may not act maliciously in the wanton abuse of his authority or use unnecessary and excessive force") (quoting Todd v. Creech, 23 N.C. App. 537, 539, 209 S.E.2d 293, 295 (1974)). Nothing alleged in Plaintiff's complaint indicates that Trooper Ridenhour's contact with Plaintiff's left leg was sufficiently wanton, contrary to his duty, or intended to inflict injury upon Plaintiff to overcome his public official immunity. Therefore, Trooper Ridenhour is entitled to public official immunity as to Plaintiff's state law claims, so he must be dismissed.

On the contrary, malice on the part of Trooper Johnson and First Sgt. Nash can be inferred from Plaintiff's allegations. Sexually assaulting a suspect during a traffic stop and using unreasonable force by placing that suspect in a chokehold are

- 22 -

acts which a man of reasonable intelligence would know to be contrary to his duty as a police officer. This conduct also indicates a reckless indifference to the rights of others and is certainly a "gross violation of generally accepted police practice and custom." Bartley, 381 N.C. at 296, 873 S.E.2d at 534. As discussed above, the law is clear that both sexual assault and the use of unreasonable force during a traffic stop are unconstitutional. Further, intent to inflict injury can be inferred from Trooper Johnson and First Sgt. Nash's conduct because it "is so reckless or so manifestly indifferent to the consequences, where the safety of life or limb is involved." Id. Therefore, because Plaintiff alleges facts demonstrating that Trooper Johnson and First Sgt. Nash acted maliciously while conducting a traffic stop and effecting Plaintiff's arrest, this court finds that a grant of public official immunity as to those defendants is not appropriate at this stage of the proceedings.

IV.   **CONCLUSION**

Plaintiff has plausibly stated a claim for excessive force in violation of the Fourth Amendment, pursuant to 42 U.S.C. § 1983, related to Plaintiff's allegations of sexual assault by Defendants Trooper Johnson and First Sgt. Nash, and related to Plaintiff's allegations of excessive force by First Sgt. Nash using the chokehold. Defendants Trooper Johnson and First Sgt.

- 23 -

Nash are not entitled to qualified immunity as to either of those claims at this stage of the proceedings. Similarly, Defendants Trooper Johnson and First Sgt. Nash are not entitled to public official immunity as to any state common law claims. Plaintiff fails to state any § 1983 claims against Trooper Ridenhour, and Trooper Ridenhour is entitled to public official immunity as to any state law claims alleged by Plaintiff, therefore he is dismissed.

For the foregoing reasons,

**IT IS THEREFORE ORDERED** that Law enforcement Defendants' Motion to Dismiss, (Doc. 13), is **GRANTED IN PART** and **DENIED IN PART.**

Law Enforcement Defendants' Motion to Dismiss, (Doc. 13), is **GRANTED** as to any federal or state law claims against Trooper Ridenhour. Law Enforcement Defendants' Motion to Dismiss, (Doc. 13), is **DENIED** as to Plaintiff's § 1983 claim related to allegations of sexual assault and excessive force by way of chokehold, and as to any state law claims, against Trooper Johnson and First Sgt. Nash.

**IT IS FURTHER ORDERED** that Defendant Trooper C. Ridenhour is **DISMISSED** from this action.

This the 27th day of September, 2023.


_____
United States District Judge